# In the United States Court of Federal Claims

No. 22-750

(Filed: February 24, 2023)

| | |
|---|---|
| BIJAN MAZARJI, | ) Claim for disability retirement from the |
| | ) United States Army; review of action by |
| | ) the Army Board for Correction of Military |
| Plaintiff, | ) Records |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

_Scott W. MacKay_, Hebron, New Hampshire for plaintiff.

_Delisa M. Sanchez_, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were _Brian M. Boynton_, Principal Deputy Assistant Attorney General, _Patricia M. McCarthy_, Director, and _William J. Grimaldi_, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C., as well as Major _Steven C. Higgins_, Litigation Attorney, United States Army Legal Services Agency, Fort Belvoir, Virginia.

## OPINION AND ORDER

LETTOW, Senior Judge.

This case arises from the United States Army's refusal to grant plaintiff Staff Sergeant ("SSG") Bijan Mazarji disability retirement based on his medical condition of _pes planus_, or flat feet.[1] Staff Sergeant Mazarji challenges the Army Board for Correction of Military Records' ("Correction Board's") denial of his request to correct his medical records and be "place[d] on the Army's permanent disability retirement list effective July 24, 2020." _See_ AR 22, 27-29, ECF No. 11.[2]

---

[1] Even though Mr. Mazarji has left the Army Reserves and has no retired status with the Army, the court will refer to him by his last military rank, Staff Sergeant.

[2] The administrative record is paginated consecutively and will be cited as "AR __."

At issue is whether the Correction Board's refusal to correct SSG Mazarji's medical record was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.  Specifically, SSG Mazarji argues that the Correction Board committed five errors: (1) concluding there was no evidence that plaintiff complained of foot pain during deployment, (2) failing to consider a disability rating for flat feet assigned by the Department of Veterans Affairs ("VA"), (3) failing to consider witness statements, (4) refusing to address plaintiff's non-frivolous arguments, and (5) failing to apply mandatory presumptions in plaintiff's favor.  *See* Pl.'s Mot. for J. on the Administrative R. ("Pl.'s Mot.") at 3-4, ECF No. 12; *see also* Def.'s Mot. for J. on the Administrative R. at 19-22 ("Def.'s Cross-Mot."), ECF No. 13.

## FACTS[3]

Plaintiff enlisted in the United States Army Reserve on January 14, 2004, and served this country until he was honorably discharged, without disability retired pay, on January 19, 2021. *See* AR 15, 81-82, 420.  Staff Sergeant Mazarji challenges the Correction Board's refusal to correct his record and grant him medical retirement based on his adult-acquired flat feet.

Adult-acquired flat feet occur when the posterior tibial tendon can no longer support the foot's arch.[4]  Using shoes with inadequate arch support, prolonged standing and walking, and repetitive high-impact activities can all contribute to adult-acquired flat feet.  AR 121.  Flat feet can cause numerous issues including pain, stiffness, and injury both to one's feet and to other parts of the body as the impact of walking and running is passed through the joints without being properly absorbed by the feet.[5]

### A. Staff Sergeant Mazarji's active duty

Staff Sergeant Mazarji's arches were normal when he enlisted in the United States Army Reserve's delayed entry program on January 14, 2004.  AR 15, 127, 614-16.  Staff Sergeant Mazarji was not diagnosed with flat feet until January 2010.  AR 607.  At that point, SSG Mazarji's flat feet were mild and asymptomatic.  AR 607.

Plaintiff was called to active duty and deployed in Afghanistan from September 2013 to June 2014.  AR 16, 57-58.  He served on a counterintelligence team in the Kandahar Province and was stationed at Forward Operating Base Frontenac.  AR 128.  The administrative record calls attention to the region's topography and SSG Mazarji's duties and equipment, all of which

---

[3] The court's findings of fact are based on the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now Rule 52.1 of the Rules of the Court of Federal Claims] from the record evidence as if it were conducting a trial on the record.").

[4] *See* U. Mich. Health, *Flatfoot – Adult-Acquired*, https://www.uofmhealth.org/ conditions-treatments/cmc/foot-and-ankle/flatfoot (last visited February 24, 2023).

[5] *See* Am. Acad. Orthopaedic Surgeons, *Adult Acquired Flatfoot*, https://orthoinfo.aaos. org/en/diseases--conditions/adult-acquired-flatfoot (last visited February 24, 2023).

reflect the exacting nature of his deployment at Frontenac.  First, the ground is covered in "medium-sized jagged rock[s]," AR 128, roughly the size of an average human fist, AR 125. And, the base is built on a "high[,] sloped hill with a grade varying from flat to about 30 degrees."  AR 435.  This environment made walking and running difficult.  AR 435, 125.

Second, SSG Mazarji's duties required him to work 12 to 18-hour days, most of which he spent on his feet.  AR 435.  He had to walk "several miles . . . each and every day," AR 435, patrolling the base and walking between its various facilities to "conduct meetings, interviews, [and] security checks."  AR 128-29, 132-33.  Midway through his deployment, the company commander ordered SSG Mazarji's unit to complete the Army Physical Fitness Test, which involved regular runs to train for a two-mile time trial.  *See* AR 435.  The conditions at Frontenac were so difficult that SSG Mazarji's commanding officer protested to the company commander. AR 435-36.  But the company commander refused to rescind his order, and SSG Mazarji trained for and completed his fitness test.  AR 435-36.

Third, SSG Mazarji's equipment exacerbated the physical toll of patrolling.  Given the frequency of incoming threats and drills, SSG Mazarji often wore a full kit, including 45-pound body armor and a helmet.  AR 128, 435.

According to SSG Mazarji, the Frontenac area's topography, the physical requirements of his duties, and the heavy equipment he often wore led to foot and ankle pain and stiffness "[a]bout mid-way through the deployment."  AR 129.  He testified that "when [he]'d wake up in the morning and step on to [his] feet for the first time there was pain and stiffness like [he] couldn't even move [his] ankles."  AR 129.  As a result, he could not stand up until he "massage[d] his feet" for "four or five minutes."  AR 129.  SSG Mazarji returned from Afghanistan in June 2014.  AR 59.

### B. Staff Sergeant Mazarji's medical condition after returning from Afghanistan

A post-deployment exam carried out on June 12, 2014 indicated SSG Mazarji remained deployable to an austere environment after his tour and identified no injuries; although SSG Mazarji was "bothered a little" by back pain and pain in his arms, legs, or joints and had "more fati[gue,]" and "aches" after deployment, AR 98-101.

Staff Sergeant Mazarji visited the Long Beach VA hospital to establish care in July 2014. AR 593.  During that visit, he "report[ed] developing numbness to the right 5th toe extending up the lateral side of his foot" and indicated that he "believe[d the] numbness was caused by [his] military boots" but reported no pain.  AR 593.  About three weeks later he returned because he pulled his left hamstring while sprinting.  AR 592.  Neither of these records discusses SSG Mazarji's *pes planus* diagnosis, either independently or in connection with these injuries.  *See* AR 592-96.

Over two years later, in October 2016, SSG Mazarji returned to the VA center in Long Beach because he was experiencing bilateral knee pain.  *See* AR 587.  He indicated the pain "[s]tarted 1-2 years ago."  AR 588.  A physical exam found he suffered from "severe *pes planus*," AR 590, and SSG Mazarji was issued Superfeet orthotic inserts, AR 590.  Two months later, in December 2016, SSG Mazarji visited a chiropractor for lower back pain and hamstring

tightness, and the records from that visit bear the annotation "2014: plantar fasciitis in the Army." AR 437.

In October 2017, SSG Mazarji filed a claim with the VA, asking for an increased disability rating for Post-Traumatic Stress Disorder and to be assigned a disability rating for flat feet. *See* AR 584-85.[6] In November 2017, SSG Mazarji completed a VA Disability Benefits Questionnaire for foot conditions for the purpose of determining whether he was eligible for disability benefits. *See* Compl. ¶ 33, ECF No. 1; AR 61-70. The questionnaire indicated that SSG Mazarji had bilateral flat feet, AR 62, and that plaintiff "state[d] the above condition began with the onset of pain in both feet . . . approximately in 2013-2014, while [o]n deployment in Afghanistan," AR 63. Based on this questionnaire and a physical examination, the VA determined SSG Mazarji's flat feet condition was service-connected and assigned him a 30 percent disability rating for that condition, effective October 20, 2017. AR 583.

### C. Staff Sergeant Mazarji's initial separation and informal PEB proceedings

The secretary of the relevant military department is required to set performance standards and prescribe procedures for reviewing "the record of any reserve officer to determine whether that officer should be required . . . to show cause for retention in an active status" because his performance "has fallen below standards." 10 U.S.C. § 14902(a). An officer who falls below such standards and does not show cause to be retained in active status will be required to retire if he is eligible and be honorably discharged if he is not. *See* 10 U.S.C. § 14905(b).

A service member is entitled to medical retirement and periodic disability pay if his disability (1) "is of a permanent nature and stable," (2) "is not the result of [his] intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence," and, for those with fewer than 20 years of service, (3) "is at least 30 percent" and either was "not noted" when the member entered active duty, is the "proximate result of performing active duty," or was "incurred in the line of duty." 10 U.S.C. § 1201(b). Servicemembers who are separated or retired are not assigned disability ratings for non-duty related injuries and therefore are not entitled to disability compensation for such injuries. *See* Army Reg. 635–40, ¶ 4–1d(1).

In July 2019, SSG Mazarji indicated on functional capacity certificate Form 507 that his bilateral *pes planus* prevented him from running or jogging two miles, which form the Army uses to assess soldiers' fitness for service. AR 515-16. In one of these forms, SSG Mazarji also indicated he was unable to "ride in a military vehicle for at least 12 hours per day," or "live in an austere environment." AR 529.

In September 2019, the Command Surgeon for the United States Army Human Resources Command ("HRC") reviewed SSG Mazarji's record and directed him to provide additional medical information for his bilateral *pes planus*. *See* AR 74. Staff Sergeant Mazarji wrote a letter providing additional records and indicated that "due to [his] physical pain, impairment, and Army Regulations" he would be unable to complete the remaining five or so years required to

---

[6] He had previously been assigned a disability rating of 10 percent Post-Traumatic Stress Disorder. AR 71-73, 584.

reach 20 years of service, and he asked to be medically retired.  *See* AR 74.  In November 2019, an officer in HRC concluded SSG Mazarji "should not be assigned to a deployable unit" based on SSG Mazarji's letter providing additional information and evaluations by two podiatrists who assessed his flat foot condition.  AR 488.  After reviewing this documentation, the Command Surgeon determined SSG Mazarji's *pes planus* "is not connected to military service . . . [and] referred [his case] to a Non-Duty Related Physical Evaluation Board."  AR 81, 84-85.

Staff Sergeant Mazarji challenged the Command Surgeon's non-duty related determination before the Physical Evaluation Board ("PEB").  By regulation, if "it is clear that the disqualifying disability is non-duty related," it is treated as such, and no line of duty investigation need be conducted unless the PEB president directs the case to be returned "for re-referral."  Army Reg. 635–40 ¶ 4–34(d).  Re-referral is warranted when and if the PEB "has evidence that the condition was incurred or aggravated in the [line of duty].  For example, the [s]oldier's military medical records reflect that the condition was incurred or aggravated when the [s]oldier was in a duty status."[7] *Id.*

An informal non-duty related physical evaluation board ("informal PEB") convened on January 6, 2020 and found that SSG Mazarji's condition was not "incurred in the line of duty" and "did not result from a combat-related injury."  AR 86.  Staff Sergeant Mazarji subsequently challenged this determination before a formal PEB, the HRC, and the Army Physical Disability Agency.  AR 89.

Prior to SSG Mazarji's formal PEB hearing, the PEB reviewed plaintiff's appeal and indicated that it "adheres to the original findings and recommendations of the informal proceedings."  *See* AR 468-70.  The PEB explained that there was "insufficient evidence to change the finding of the informal board" because SSG Mazarji "did not submit any objective medical evidence" establishing a "direct nexus" between his flat feet and his military service; SSG Mazarji's records following his 2014 deployment documented "no medications for foot pain, no profiles[,] and no joint or chronic pain" and contained no line of duty determination; and because he did not require custom orthotics until years after his deployment.  AR 468.[8]  The PEB also based its decision on the fact that SSG Mazarji had "completed over 950 hours of law enforcement training and graduated from the Orange County Sheriff's Academy" after his 2013-2014 deployment and around the time he asked the VA to assign him a disability rating for his flat feet.  *See* AR 468 (internal quotations omitted); *see also* AR 379 (non-commissioned officer evaluation covering June 2016 to June 2017), AR 583 (VA rating decision issued November 27, 2017).

---

[7] A line of duty investigation determines whether a soldier's "injury, illness, disease, or death" was incurred or aggravated in the line of duty and whether it was due to the soldier's misconduct.  Army Reg. 600–8–4 ¶ 2–5.

[8] The Board's explanation states he was not issued custom orthotics until 2019, AR 468, but SSG Mazarji was provided Superfeet orthotics in October 2016, two years after he returned from Afghanistan, AR 587-90.

### D. Formal PEB proceedings and HRC's July 2020 advisory opinion

In preparation for the formal PEB hearing, SSG Mazarji submitted, among other evidentiary materials, medical records documenting his condition throughout his military career as well as statements from Chief Warrant Officer 3 (CW3) James P. Kennedy Jr. and Sergeant Ryan A. Van Heeswyk.  AR 463-64.

Staff Sergeant Mazarji reported to CW3 Kennedy during his 2013-2014 tour in Afghanistan.  AR 122.[9]  Chief Warrant Officer Kennedy averred that, although he remembered some "normal, minor complaints about sore feet and ankles," he otherwise "did not see SSG Mazarji have any difficulty with his physical fitness" during their pre-deployment training in Fort Hood.  AR 122.  After deploying to Frontenac, however, CW3 Kennedy "noticed a complaint of pain by, and deterioration in[,] SSG Mazarji's physical abilities."  AR 123-24. Staff Sergeant Mazarji objected to a roommate and requested a lower bunk because "getting out of a higher bunk hurt his feet," which were made painful and stiff by "the condition of the terrain on [Forward Operating Base] Frontenac and the amount of walking he did on base."  AR 123. Chief Warrant Officer Kennedy recounted that "before or during mobilization [he] advised SSG Mazarji to have his foot condition documented by the medical staff during out-processing" and was "told later by [SSG Mazarji] that he had [done] this."  AR 124.

Sergeant Van Heeswyk also served with SSG Mazarji in Afghanistan.  AR 125.  During part of this deployment, they were roommates.  AR 125.  In his statement, Sergeant Van Heeswyk avers that "SSG Mazarji often complained about his feet hurting in his issued combat boots and running shoes . . . [and] of foot pain in the morning when he woke up."  AR 125.

Staff Sergeant Mazarji testified before the formal PEB in June 2020 that he had normal arches when he entered the Army and was first told of his falling arches in 2010.  AR 127-28. He averred that his *pes planus* condition was asymptomatic and mild until sometime between 2013 and 2014.  *See* AR 128.  He testified that at that point, "[a]bout mid-way through the deployment[, his] feet were just constantly hurting" and that he began experiencing "pain and stiffness" that prevented him from moving his ankles.  AR 129.  He would "massage [his] feet every morning" for "four or five minutes until [he] could actually get up out of bed."  AR 129. During the hearing, SSG Mazarji did not, however, recall whether he obtained medical treatment for his flat feet during deployment.  AR 129 (Q: "Did you ever seek medical treatment while you were deployed in that 2013-2014 time period?" A: "I don't recall specifically if I, if I did go there for [foot pain and stiffness.]").  In 2016, after SSG Mazarji returned from Afghanistan, his *pes planus* condition was diagnosed as moderate or severe.  *See* AR 130.

---

[9] There are two versions of CW3 Kennedy's statement in the record that are relevantly similar.  One is undated and was submitted as an exhibit to a contention memorandum that SSG Mazarji filed with the PEB the day before his hearing on June 2, 2020.  AR 110, 122-24.  The other was sworn before a notary public on July 14, 2020 and submitted with SSG Mazarji's request that the HRC overturn its decision that plaintiff's medical condition was unconnected with his service.  AR 144, 148-49.

The formal PEB indicated it was "unable to make a final decision," because some "evidence submitted during the Formal Board . . . was not available to [HRC] when [it] staffed the decision to find the case non-duty related on 19 November 2019." AR 461.  Accordingly, the formal PEB asked HRC to issue an advisory opinion that reexamined its initial non-disability retirement determination considering this new evidence. AR 461.  Human Resources Command complied and affirmed its original opinion, AR 140, 458, explaining that SSG Mazarji offered no records documenting foot complaints "until two years after deployment" and therefore failed to show his service exacerbated his flat feet "over and above the natural progression of the condition," AR 457.  It directed the formal PEB to "[c]ontinue processing this claim as [non-duty related]." AR 140.  The formal PEB reconvened on July 24, 2020 and issued an opinion agreeing with HRC's renewed findings.  AR 449.

About a month later, on August 26, 2020, SSG Mazarji asked HRC to overturn its determination that his foot condition was not incurred in the line of duty. AR 144-45.  Along with this request, SSG Mazarji provided new evidence: (1) email correspondence documenting his unsuccessful attempt to locate his deployment medical records, (2) a sworn version of CW3 Kennedy's previously issued statement, and (3) a chiropractic consultation form from December 23, 2016, with the annotation: "2014: plantar fasciitis in the Army." AR 144.  On August 31, 2020, SSG Mazarji filed a memorandum with the same evidence, as well as his own sworn statement explaining his recollection of seeking medical assistance during deployment, requesting that the PEB ask HRC to review his case again.  *See* AR 430-32.  In his sworn statement, plaintiff indicates he contacted two regiments to locate the medical records from his deployment. AR 438-39.  While neither had any records, he avers that this correspondence reminded him that he "visited the aid station in the winter of 2014 to complain about the pain in [his] feet" while working with the medics to help him develop a local Afghan intelligence source. AR 438-39.

On September 1, 2020, the PEB responded to SSG Mazarji's August 31 memorandum. AR 162.  The PEB adhered to the original findings of the formal proceeding and indicated that— because the PEB had already asked for HRC review and HRC responded endorsing the formal PEB's findings—the "PEB must adhere to the original findings of the formal board." AR 162.  About two weeks later the Army Physical Disability Agency, another component of HRC, affirmed the formal PEB findings and the HRC's advisory opinion and indicated "any future submission for correction may be directed to the Army Board for Correction of Military Records." AR 164.

### E.  Staff Sergeant Mazarji's petition to the Correction Board and suit in this court

On December 8, 2020, SSG Mazarji petitioned the Correction Board to correct his military record by designating his separation as a medical retirement. AR 178-79.[10]  He contended that a preponderance of the evidence shows that his flat feet condition was exacerbated by his 2013-2014 deployment and that HRC's advisory opinion was invalid because

---

[10] Staff Sergeant Mazarji's application form is dated December 8, 2020, while the email transmitting the application is dated December 9, 2020.  *See* AR 178, 180.  His application was resubmitted with additional evidence on April 27, 2021.  *See* AR 27-177.

it failed to consider both the VA Disability Benefits Questionnaire and ratings decision from 2017 and witness testimony from CW3 Kennedy, Sergeant Van Heeswyk, and SSG Mazarji himself.  AR 200-01.  To this request he appended an October 19, 2020 letter from his chiropractor Dr. April Lopez, in which she states his *pes planus* condition was "hastened and aggravated by his 2014 deployment to Afghanistan."  AR 165.  Staff Sergeant Mazarji further argued that the PEB and United States Army Physical Disability Agency erred by failing to consider the VA's disability rating and that the PEB improperly failed to apply the presumption of soundness, which presumes to be service-related a condition that is not noted at entry into active service and presents during or after active duty.  AR 201-04.

The Correction Board asked an Army Review Board Agency medical advisor to review SSG Mazarji's case, and the advisor issued an opinion on February 25, 2022.  AR 5-6.  Because the Correction Board ultimately agreed with the medical advisor's conclusions, the court treats the medical advisor's findings and reasoning as those of the Correction Board.  *See* AR 22. After reviewing SSG Mazarji's application to the Correction Board and additional health and service records, the medical advisor found SSG Mazarji "never had a complaint of foot issue[s] or problem[s] before, during, or immediately after his last deployment to Afghanistan."  AR 5. The advisor concluded that SSG Mazarji's reported medical conditions "were found after he [was] discharged from his last Active Duty service," and were "not aggravated by his deployment."  AR 6.  The opinion explained that the VA service-connected disability rating did not require a finding that SSG Mazarji's flat feet were service-connected for the purpose of classifying his separation as medical retirement because the VA's roles and authority are defined and executed "under a different set of laws" than the Department of Defense's ("DOD's") disability evaluation system.  AR 6.

The Correction Board adopted the medical advisor's findings and recommendations and by a two-to-one vote "concluded there was insufficient evidence of an error or injustice which would warrant a change to the applicant's narrative reason for separation, a change to the applicant's pay records and/or a change to the applicant's medical record."  AR 22.

On July 11, 2022, plaintiff filed his complaint in this court.  Compl. ¶¶ 60-78.  Staff Sergeant Mazarji asks this court to order the correction of his military records and award disability retired pay and benefits retroactive to his discharge date.  Compl. ¶ 79.  The government moved for judgment on the administrative record in response, arguing the Correction Board's decision is supported by substantial evidence and is neither arbitrary nor capricious.  *See*  Def.'s Cross-Mot. at 19.  It also contends that remand, rather than an order directing the Correction Board to correct SSG Mazarji's records, would be the proper remedy if the court finds in plaintiff's favor.  Briefing was completed and the court held a telephonic hearing on February 23, 2023.  *See* Pl.'s Resp. and Reply to Def.'s Mot. ("Pl.'s Resp."), ECF No. 17; Def.'s Reply in Support of Its Mot. ("Def.'s Resp."), ECF No. 20.  The competing motions are ready for disposition.

## STANDARDS FOR DECISION

In resolving a motion for judgment on the administrative record, the standard of review "depend[s] upon the specific law to be applied" in the case at issue.  RCFC 52.1 Rules Committee Note, 2006 Adoption.  When reviewing decisions based on military records, this

court's role is "limited" because "the substance of such decisions" is "committed to the discretion of government officials, [and] is frequently beyond the institutional competence of courts to review." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Accordingly, this court will only overturn the decision of a military correction board if that decision is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010). A board's decision that is "reasonable and supported by substantial evidence" will not be overturned. *Ford v. United States*, 150 Fed. Cl. 220, 224 (2020). "[W]hen reasonable minds could reach differing conclusions on the same evidence" this court "cannot substitute [its] judgment for that of the military departments." *Banerjee v. United States*, 77 Fed. Cl. 522, 533 (2007) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Moreover, this standard "does not require a reweighing of the evidence." *Heisig*, 719 F.2d at 1157.

## ANALYSIS

The parties disagree on whether the Correction Board erred by (1) finding there was no evidence that plaintiff complained of foot pain during deployment, (2) failing to consider and adequately explain its disagreement with plaintiff's VA disability rating, (3) failing to consider witness statements as required by Army Regulation 600–8–4, (4) not applying the presumptions of soundness and incurrence or aggravation in plaintiff's favor, and (5) failing to address plaintiff's non-frivolous arguments.[11]

### A. *Evidence of foot pain during deployment*

Staff Sergeant Mazarji contends that "Army and VA records demonstrated that [he] complained about the manifestation of his foot pain that occurred during his period of active duty in Afghanistan." Pl.'s Mot. at 16. In challenging the Correction Board's finding that plaintiff "never had a complaint of foot issue or problem before, during, or immediately after his last deployment to Afghanistan," plaintiff focuses specifically on his own sworn statement, his testimony before the formal PEB, statements by CW3 Kennedy and Sergeant Van Heeswyk, and a written statement from his chiropractor, Dr. April Lopez. *Id.* at 16-17 (quoting AR 20).[12]

The government responds that the Correction Board did consider this evidence, but ultimately found it unpersuasive. Def.'s Cross-Mot. at 22-23. The government argues that, while SSG Mazarji complained of toe numbness in 2014, his foot pain was not documented until October 2016. *Id.* at 23. Regarding his own and his fellow servicemembers' statements specifically, the government contends that the Correction Board "afforded more weight to the

---

[11] The parties also contest whether the statute of limitations for SSG Mazarji's claim had run by 2022, when he filed his complaint in this court. The government's arguments in this regard are unavailing. Staff Sergeant Mazarji's claim may date back to events in 2014, but his *pes planus* did not clinically manifest itself until later, no earlier than 2016. *See infra*, at 10.

[12] Staff Sergeant Mazarji also contends the VA questionnaire and disability ratings decision provide evidence his condition was aggravated during deployment. Pl.'s Mot. at 21-27. The court addresses these arguments *infra*, at 11-14.

objective contemporaneous medical evidence . . . than the non-contemporaneous statements that [SSG] Mazarji offered after the fact." *Id.* at 24. According to the government, plaintiff's complaints go to the relative weight the Correction Board assigned evidence, and such decisions must not be disturbed by the court. *Id.*

The Correction Board considered each of the cited witness statements. The Correction Board's record of decision lists as "supporting documents considered by the board" SSG Mazarji's contention memorandum dated June 1, 2020, containing CW3 Kennedy's and Sergeant Van Heeswyk's statements, *see* AR 9, 14, and his request that the PEB reconsider its findings considering new evidence dated August 31, 2020, containing SSG Mazarji's sworn statement, AR 9, 431-32. It also lists the letter from Dr. April Lopez as "Chiropractor Letter dated 19 October 2020" and SSG Mazarji's sworn testimony before the formal PEB. AR 9-10, 165.

Regarding these items' probative value, each statement was made a few years after his most recent deployment concluded in 2014 and his *pes planus* was first exposed in 2016. The statements from CW3 Kennedy were made after he retired in 2019, *see* AR 435-56 (dated July 14, 2020); AR 122 (stating, "I retired in August[] 2019."), Sergeant Van Heeswyk's statement is dated May 22, 2020, AR 464, and SSG Mazarji's was recorded on August 28, 2020, AR 438-39. Moreover, in one of SSG Mazarji's statements, he "recall[s] new facts [he] had previously forgotten"—namely that he visited an aid station for his flat feet while on deployment—and contradicts his prior testimony before the formal PEB in 2020. AR 438-39. During the 2020 proceeding, he stated he did not remember seeking medical treatment for his flat feet while on deployment. AR 129. Dr. April Lopez's statement was recorded in Fall 2020 and indicates she did not start treating SSG Mazarji until 2016. AR 165. These statements do provide some evidence in favor of SSG Mazarji's claim, but the Correction Board was reasonable in finding they were outweighed by contemporaneous objective medical evidence tending to show his symptoms arose a few years after he returned from Afghanistan. Indeed, SSG Mazarji did not complain of foot pain or stiffness in either his June 2014 post-deployment health assessment, *see* AR 99, or a follow up appointment for toe numbness later that year, AR 593. The first record documenting SSG Mazarji's foot pain was in October 2016 during a visit in which he was issued Superfeet orthotics. *See* AR 587. Notwithstanding the state of his condition, SSG Mazarji completed 950 hours of law enforcement training between 2016 and 2017 and graduated from a Sheriff's Academy in 2017. AR 379.

The precedents SSG Mazarji cites in contending the Correction Board failed to analyze his evidence are inapposite. In those cases, the military boards either entirely failed to address evidence they were required to rely upon, *see Verbeck v. United States*, 89 Fed. Cl. 47, 65-70 (2009); *Beckham v. United States*, 392 F.2d 616, 621-23 (Ct. Cl. 1968), or, at most, made only "attenuated and tangential references" to, *Verbeck*, 89 Fed. Cl. at 66, or "vaguely acknowledged," *Rudo v. Geren*, 818 F. Supp.2d 17, 26-27 (D.D.C. 2011), arguments and evidence favorable to the plaintiff. Indeed, in two of the cases SSG Mazarji cites, the courts found error because the military board entirely failed to rule on the issue. *See Saint Fleur v. McHugh*, 83 F. Supp.3d 149, 157-58 (D.D.C. 2015); *Beckham*, 392 F.2d at 621-22. Here, in contrast, the Board thoroughly summarized SSG Mazarji's contentions and military record, noting the favorable evidence included therein, and provided sufficient reasoning to support its decision. *See* AR 11-22.

The Correction Board considered these statements, and its conclusion that SSG Mazarji never complained of his flat feet "before, during, or immediately after his last deployment to Afghanistan," AR 5, is neither arbitrary, capricious, nor unsupported by substantial evidence.

### B.   Department of Veterans Affairs' disability questionnaire and ratings decision

The parties disagree on both whether the Correction Board considered the VA disability rating decision and whether the Board offered a sufficient explanation for its decision contrary to that of the VA.  The resolution of this disagreement turns on differences between the VA disability and DOD retirement compensation programs and the fact that DOD is not bound by the VA's decision.

Depending on his circumstances, a servicemember may be entitled to compensation from the DOD, the VA, or both.  A servicemember is entitled to compensation from the DOD if he is medically retired because a "physical disability incurred while entitled to basic pay" renders him "unfit to perform the duties" of his office.  *See* 10 U.S.C. § 1201(a).  This payment is determined by the servicemember's monthly base pay at the time of separation and his combined disability rating, the sum of the DOD-assigned percentage for each qualifying disability.  *See* 10 U.S.C. §§ 1401, 1407, 1409(b).

The VA compensates servicemembers who are "discharged or released under conditions other than dishonorable" for disabilities that are service-connected.  38 U.S.C. § 1110.[13]  In other words, the VA makes awards "[f]or disabilit[ies] resulting from personal injury suffered or disease contracted in line of duty . . . during a period of war," provided the injury was not "a result of the veteran's own willful misconduct or abuse of alcohol or drugs."  38 U.S.C. § 1110. A disability is "service-connected" if it was "incurred or aggravated . . . in line of duty in the active military."  38 U.S.C. § 101(16).

Although the DOD and VA use the same ratings schedule and evaluation system to assign a disability percentage, the departments' compensation regimes differ in important ways. *See* Kristy N. Kamarck & Mainon A. Schwartz, *Cong. Rsch. Serv.*, R40589, *Concurrent Receipt of Military Retired Pay and Veteran Disability* ("CRS Report"), 4 (2020).  The DOD measures disability for the purpose of determining whether an individual is fit for continued service.  *Id.*  If it finds the servicemember is not fit, he is retired or discharged, and the percentage he is assigned reflects "deferred compensation for a career of service."  *Id.* at 1.  Put differently, the DOD's disability rating represents a "snapshot of the service member's condition at the time of separation from the service."  *Stine v. United States*, 92 Fed. Cl. 776, 795 (2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011); *see also Campbell v. United States*, No. 2022-1382, 2022 WL 2824674, at *3 (Fed. Cir. July 20, 2022).

The VA, on the other hand, periodically assesses a servicemember's disability to "reflect the average loss of earning power" over time.  CRS Report at 4.  So, whereas the DOD-assigned

---

[13] "'[S]ervice-connected' means the same thing as 'incurred in the line of duty.'" *Shedden v. Principi*, 381 F.3d 1163, 1166 (Fed. Cir. 2004).

disability percentage cannot be increased to reflect a new or worsening condition, a servicemember can request a "medical reexamination at any time" and his or her VA disability compensation can be adjusted accordingly. *See id.* at 3. These features can cause a servicemember to be assigned different DOD and VA disability ratings. Because of these differences, a VA disability rating "is in no way binding upon the court nor conclusive on the issue of disability retirement." *Finn v. United States*, 548 F.2d 340, 356 (Ct. Cl. 1977); *see also Davila v. United States*, No. 21-2209, 2022 WL 2827478, at *5 n.2 (Fed. Cl. July 20, 2022) (reasoning that because a "VA finding is not binding on the [Correction Board]," the VA's service-connection finding issued 20 years after the Correction Board's initial disability determination is insufficient to reset the statute of limitations).

Staff Sergeant Mazarji contends that the Correction Board failed to consider the VA's determinations and offered an inadequate justification for its disagreement with the VA's determinations. First, he argues that the Correction Board failed to consider the VA's service-connection determination at all and that this failure is "contrary to the well-established law in the Federal Circuit that a correction board is required to consider a VA disability determination as relevant evidence." Pl.'s Mot. at 16.

Second, SSG Mazarji explains that "[t]he [Correction Board] was required to consider and to articulate a satisfactory explanation regarding the probative weight of the VA determination." Pl.'s Mot. at 22-23. He contends that, because the VA and DOD apply the same standard to determine whether a disability was incurred in the line of duty, the Correction Board must adopt the VA's determination that the disability was incurred in the line of duty or "offer a rational explanation" for the Correction Board's departure from the VA's determination. *Id.* at 25-27. On this view, a "bald assertion that the VA and DoD operate under a different set of laws" is insufficient. *Id.* at 23. SSG Mazarji contends the Correction Board's explanation is also deficient because it relied upon a false factual premise. *Id.* He argues that the Correction Board erroneously discredited the VA disability rating because it was based upon "anticipated future severity or potential complications" associated with SSG Mazarji's flat feet, AR 21, but the VA rating in fact found that he experienced pain during deployment. Pl.'s Mot. at 23-24.

In support of this first point, plaintiff analogizes his circumstances to those at issue in *Valles-Prieto v. United States*, 159 Fed. Cl. 611, 618 (2022). *Valles-Prieto* involved an Air Force servicemember's challenge to a decision by an Air Force Board for the Correction of Military Records ("Air Force Correction Board") "denying him disability retirement pay and benefits." *Id.* at 613. Plaintiff was diagnosed with "a depressive disorder," for which "the VA assigned plaintiff a 30% disability rating." *Id.* at 614. He was then honorably discharged without being referred to the disability evaluation system and assessed for medical retirement. *Id.* at 614. Valles-Prieto argued that he should have received such a referral to determine his fitness for continued service "prior to his separation from the Air Force." *Id.* at 615. The Air Force Correction Board denied his request, finding that there was "*no evidence*" plaintiff's condition interfered with his fitness to serve. *Id.* at 617 (quoting the Air Force Correction Board's decision). The Air Force Correction Board "acknowledged" that plaintiff received a VA disability rating but dismissed the rating because the VA "operat[es] under a different set of laws" and assigns its disability rating "without regard to [the medical condition's] impact upon a member's fitness to serve." Administrative R. at 4, *Valles-Prieto*, No. 20-cv-589 (Fed. Cl. May 19, 2021), ECF No. 24. The Court of Federal Claims held that the Air Force Correction Board's

decision was not supported by substantial evidence because it failed to consider, among other evidence, plaintiff's disability rating. *Valles-Prieto*, 159 Fed. Cl. at 618. The Air Force Correction Board did not expressly list plaintiff's VA disability rating decision as evidence that the panel considered, although it was included as an attachment to one of plaintiff's filings that the board had considered. Administrative R. at 9, 14, *Valles-Prieto*, No. 20-cv-589.

Staff Sergeant Mazarji argues his case is analogous to *Valles-Prieto* because the Correction Board here also "refuse[d] to consider a VA disability determination based on the bald assertion that the VA and DoD operate under a different set of laws." Pl.'s Mot. at 23. The government responds that the Correction Board did consider the VA rating. Def.'s Cross-Mot. at 24-26. The government points out that the Correction Board "specifically listed the VA rating . . . as evidence that it considered." *Id.* at 25. Further, it contends the Correction Board is not obligated to explain its departure from the VA's disability determination, and plaintiff cites no authority identifying such an obligation. *Id.* Instead, it avers that the presumption of regularity applies and removes the Correction Board's obligation to explain its decision because there is no record evidence indicating its decision was arbitrary or capricious. *Id.* at 26. The government also distinguishes *Valles-Prieto* because that case addressed a Correction Board's disagreement with the VA's fitness determination rather than a disagreement with the VA's service-connection assessment, which is at issue in this instance. *See id*. at 26.

Here, the VA's questionnaire and disability rating were listed as "supporting documents considered by the board." AR 9. Regarding the Correction Board's explanation of the VA records' probative weight, the Correction Board focused on countervailing evidence in medical records created closer in time to SSG Mazarji's Afghanistan tour that suggested his flat feet were not aggravated by service. AR 5-6; AR 592 (indicating SSG Mazarji denied foot pain in 2014); AR 587 (finding SSG Mazarji's *pes planus* was severe in 2016); AR 581-82 (VA rating); AR 61-70 (VA questionnaire). Indeed, the VA's service-connection determination appears to be based primarily upon SSG Mazarji's statement during the 2017 examination that "he noticed [symptoms] about a few years ago . . . while on deployment in Afghanistan," *see* AR 63. The treating physician did not note any other evidence tying plaintiff's flat feet to his service, see AR 61.

In *Valles-Prieto*, the court held that a military correction board's decision is not supported by substantial evidence if it "failed to consider the entire record because it cherry-picked which evidence to consider." 159 Fed. Cl. at 617-18. The Air Force Correction Board in *Valles-Prieto* had "declined to consider plaintiff's disability rating as relevant evidence," and this failure was part of a broader "fail[ure] to consider evidence in the record contrary to its conclusion." *Id.* at 618. Here, the Correction Board explicitly lists the VA questionnaire and disability ratings decision as evidence it considered, and it weighed other pieces of evidence contrary to its conclusion, including witness statements from care providers and fellow servicemembers as well as testimony suggesting SSG Mazarji's foot pain and stiffness worsened in Afghanistan. *See supra* 9-11; *see also* AR 9-10, 14.

Additionally, the Air Force Correction Board in *Valles-Prieto* lacked objective evidence and instead relied upon speculation to support its conclusion that Valles-Prieto was not separated because of his mental health. 159 Fed. Cl. at 618. Here, the Correction Board had objective evidence supporting its conclusion that the deterioration of SSG Mazarji's flat feet condition was

not service-connected, including a 2014 Post Deployment Health Assessment in which he did not complain of foot pain or tightness, *see* AR 97-102, notes from another 2014 medical visit for toe numbness indicating he again denied pain, *see* AR 174, an October 2016 exam indicating his *pes planus* was then severe, AR 587, a November 2017 report indicating SSG Mazarji completed 950 hours of law enforcement training between summer 2016 and summer 2017, AR 378-79, and the 2017 VA rating decision, AR 581-82. These objective documents support the Correction Board's determination that SSG Mazarji's symptomatic flat feet were "not aggravated by his deployment to Afghanistan" and instead were "found after he [w]as . . . discharged from his last Active Duty service" as well as its conclusion that there was "insufficient evidence of an error . . . which would warrant" changing SSG Mazarji's records. AR 21-22. Its decision deviating from the VA's rating decision is based on the factual finding that plaintiff's flat feet symptoms did not manifest until after he returned from deployment. The evidentiary support for this conclusion renders the VA's rating decision insufficient to prevent the presumption of regularity from attaching to the Correction Board's decision.

Staff Sergeant Mazarji also contends that the VA's service-connection decision found that his flat feet became symptomatic during his deployment and that the Correction Board erroneously construed the decision as finding SSG Mazarji's symptoms arose only after his Afghanistan tour. Regarding the plaintiff's reading of the VA's rating decision, that decision does not contain a finding that symptoms of SSG Mazarji's flat feet manifested during his deployment. *See generally*, AR 583-86. Nor is such a finding required for the VA to determine a condition is service-connected, so the VA's conclusion that SSG Mazarji's condition was service-connected cannot be read to entail such a finding. *See Temps v. Shinseki*, No. 06-2583, 2009 WL 224057, at *3 (Vet. App. Jan. 30, 2009) ("To be compensated for a disability that manifests after discharge, a claimant must show a causal relationship between the present disability and an injury or disease, or aggravation thereof incurred during service.").

Regarding plaintiff's understanding of the Correction Board's rationale, the Correction Board's statement that the VA's award may account for "anticipated future severity or potential complications," AR 6, identifies an abstract difference between the VA and DOD compensation programs, not a particular finding the VA made in reaching its service-connection determination. Put differently, the Correction Board's statement merely explains a feature of the systems that may, in general, lead to such disparities. It does not suggest this general difference accounts for the Correction Board's disagreement with the VA's service-connection determination in SSG Mazarji's case. Instead, the VA and the Correction Board's disparate results stem from decisionmakers assigning different weights to the evidence before them. This circumstance does not support a finding that the Correction Board erred because its decision is sufficiently well-supported by objective medical evidence in the administrative record.

### C. Witness statements and Staff Sergeant Mazarji's testimony

Staff Sergeant Mazarji also alleges that the Correction Board failed to obtain or consider evidence as required by Army Regulation 600–8–4. Pl.'s Mot. at 28. He contends that a line of duty investigation in compliance with this regulation was required "once the PEB, after the formal hearing, indicated to [HRC] that evidence existed that indicated it was not 'clear' whether Mr. Mazarji's condition was non-duty related." Pl.'s Resp. at 17-18.

14

Specifically, paragraph 2–4.b.(1) of the regulation requires the Correction Board to consider "[a]ll direct evidence, that is, evidence based on actual knowledge or observation of witnesses," and paragraph 4–15 provides that "[o]ral or written accounts of matters within the personal knowledge of individuals usually constitute an indispensable part of the evidence considered in an investigation" and that "[s]worn statements carry more weight than unsworn statements." Army Reg. 600–8–4 ¶¶ 2–4, 4–15. Staff Sergeant Mazarji contends that the Correction Board acted contrary to these paragraphs when it failed to consider his own sworn testimony as well as statements from Sergeant Van Heeswyk and CW3 Kennedy. Pl.'s Mot. at 30-31. He also alleges the Correction Board's failure to consider the VA questionnaire and Dr. April Lopez's statement violated the Board's requirement to "consider any 'expert medical opinion from an appropriate provider' that addresses 'when the condition was incurred, if the condition existed prior to the current military service and whether the condition was service aggravated.'" *Id.* at 31 (quoting Army Reg. 600–8–4, ¶ 2–2.b).

The government counters that Army Regulation 600–8–4 applies only if the Army is required to conduct a line of duty investigation in the first instance. Def.'s Cross-Mot. at 27. Accordingly, because SSG Mazarji's case was "properly treated as non-duty related," that regulation does not apply, and the Correction Board's decision cannot have acted contrary to it. *Id.*

As discussed, the Correction Board considered each piece of evidence SSG Mazarji identifies, *see supra* at 10, 13-14. Additionally, Army Regulation 600–8–4 does not apply to SSG Mazarji. The Army referred SSG Mazarji to a non-duty related physical evaluation board. AR 477. It was permitted to do so without first completing a line of duty investigation resulting in a finding that the injury was not incurred in the line of duty. AR 635–40 ¶ 4–34 (indicating no such investigation and finding is required "when it was clear that the disqualifying disability is non-duty related"). The regulations provide as an example of such a condition "an amputation that was incurred when the Soldier was not in a duty status." *Id.* Army Regulation 600–8–4 "prescribes policies and procedures for investigating the circumstances of injury . . . of a soldier" and "provides standards and considerations used in making line of duty . . . determinations" based on such investigations. Army Reg. 600–8–4 ¶ 1–1. Human Resources Command referred SSG Mazarji's case to the non-duty PEB without initiating a line of duty investigation because it had determined the condition "is not connected to military service" and was incurred or aggravated while he was not on active duty. *See* AR 477. The PEB's request for an advisory opinion to determine whether "line of duty consideration is warranted for this case," AR 459, is distinct from a decision by the PEB president to "terminate[] the non-duty related case adjudication" and "direct the return of the cause for re-referral," Army Reg. 635–40 ¶ 4–34. The former asks for an opinion as to whether the regulatory predicate for exercising authority has been met, the latter is the exercise of that authority.

Because HRC was not required to and did not conduct a line of duty investigation into SSG Mazarji's flat feet condition, Army Regulation 600–8–4 does not apply. Accordingly, the Correction Board did not act contrary to this regulation. Nevertheless, the Correction Board did consider each piece of evidence SSG Mazarji identifies.

### D.  Consideration of Staff Sergeant Mazarji's arguments

Staff Sergeant Mazarji levels a related contention that the Correction Board failed to "consider or respond to *all* of the evidence and argument Mr. Mazarji presented in his application." Pl.'s Mot. at 35. In particular, he alleges the Correction Board failed to address his arguments that the Army violated regulation 600–8–4, that the VA determination required finding his flat feet were service-connected, and that his own testimony and corroborating statements, as well as the VA questionnaire, established that foot pain manifested while he was on active duty in Afghanistan. *Id.* at 34-35.

The government contends that the Correction Board did, in fact, consider all of SSG Mazarji's arguments. Def.'s Cross-Mot. at 28. Each piece of evidence he presents is reflected in the Correction Board's decision, including his VA rating. *Id.* Consequently, even assuming Army Regulation 600–8–4 applies, the Correction Board's decision considered SSG Mazarji's arguments and evidence, and the Correction Board's decision adequately addressed SSG Mazarji's arguments. The Correction Board focused on the support that objective, contemporaneously created medical evidence lent to its conclusion that SSG Mazarji's flat feet were found after he was released from active duty, and therefore were not service-connected. *See* AR 21. Additionally, it considered statements from care providers and fellow servicemembers as well as the VA disability rating decision and found this evidence insufficient to outweigh the ample objective medical evidence to the contrary.

### E.  Applicability of the presumptions of soundness and incurrence or aggravation

The parties contest whether two presumptions apply to SSG Mazarji: the presumption of sound condition and the presumption of incurrence or aggravation. Under the presumption of sound condition, if the servicemember's complained-of condition "was not noted" when he entered the relevant active-duty period, it will be presumed that the servicemember "entered their current period of military service in sound condition," *i.e.,* that the injury was not preexisting. Dep't Def. Instruction No. 1332.18, *Disability Evaluation System* ("DODI No. 1332.18"), App. 3 Enclosure 3 § 7.b(1) (2018). Similarly, a servicemember will be presumed to have incurred or aggravated the complained-of condition in the line of duty "unless the disease or injury was noted at the time of entry into service." DODI No. 1332.18, App. 3 Enclosure 3 § 7.c(1).[14] For the presumption of aggravation to attach, the servicemember must first establish the condition increased in severity. *See Verdon v. Brown*, 8 Vet. App. 529, 538 (1996).

Staff Sergeant Mazarji claims he is entitled to these presumptions.[15] The government contends neither presumption applies because the Correction Board determined his *pes planus* was neither incurred nor aggravated during his time in Afghanistan. Def.'s Cross-Mot. at 29.

---

[14] The complained-of injury also must have been incurred or aggravated while serving on continuing orders to active duty specifying a period of more than 30 days. DODI No. 1332.18, App. 3 Enclosure 3 § 7.b(1).

[15] Plaintiff numbers three presumptions, but the third, "failing to cite or adduce clear and unmistakable evidence demonstrating that Mr. Mazarji's foot pain existed before his entrance on

Both the presumption of sound condition and presumption of incurrence or aggravation contemplate as the alternative scenario that the veteran's complained-of condition was incurred before entering service. Indeed, the DOD Instruction SSG Mazarji cites indicates as much by stating that the presumption is overcome "if clear and unmistakable evidence demonstrates that the disability existed before the Service member's entrance on their current period of active duty and was not aggravated" during their service. DODI No. 1332.18, App. 3 Enclosure 3 § 7.b(2); *see also id.* App. 3 Enclosure 3 § 7.c(1) (indicating the presumption of incurrence or aggravation is likewise overcome by "clear and unmistakable evidence" that the condition "existed prior" to and "was not aggravated by the current period of military service"). In effect, the Correction Board did not err by refusing to apply either presumption because SSG Mazarji failed to rebut the evidence suggesting his condition was incurred or aggravated after his active tour of duty concluded. Indeed, applying these presumptions here would ignore SSG Mazarji's own statements that he was not experiencing foot pain on medical records created immediately after he left active duty in 2014 and evidence that he did not report such pain until 2016.

## CONCLUSION

For the reasons stated, the government's motion for judgment on the administrative record is GRANTED and the plaintiff's motion for judgment on the administrative record is DENIED.

The Clerk is directed to enter judgment in favor of the defendant.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

the period of active duty . . . and was not aggravated by that period of military service" is encompassed by the first two. *See* Pl.'s Mot. at 36-37.